Affirmed.

32 C.C.P.A.(Patents)

**In re LAMB.**

**Patent Appeal No. 4945.**

Court of Customs and Patent Appeals.

Dec. 11, 1944.

278

Frank M Slough, of Cleveland, Ohio (Donald A. Gardiner, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 12 to 15, inclusive) in appellant's application for a patent for an alleged invention relating to improvements in safety scaffolds, particularly "scaffold brackets," for use on stacks, chimneys, tanks, and the like.

Claim 12, which is illustrative of claim 13, and claims 14 and 15, read:

"12. In a scaffold of the character described consisting of a plurality of floor board supporting brackets adapted to be mounted upon a structure to be worked upon, each bracket being generally triangular in form comprising an upright portion, an outwardly extending horizontally disposed portion, and an interconnecting brace, said upright and said horizontally disposed portion being hingingly secured together and said interconnecting brace being pivotally secured to said horizontally extending portion, the upper end portion of said brace adapted to have rotating movement about said pivot, the opposite end of said brace being provided with means adapted to cooperate with means provided on the adjacent end of said upright whereby said brace may be adapted to be secured to said upright in a plurality of different operative positions upon said upright whereby said bracket is adapted for use upon various degrees of inclination of the work structure without change of position of the horizontally disposed member of the bracket."

"14. In a scaffold of the character described consisting of a plurality of floor board supporting brackets adapted to be mounted upon a structure to be worked upon, each bracket being generally triangular in form comprising an upright portion, an outwardly extending horizontally disposed portion, and an interconnecting brace, said upright and said horizontally disposed portion being hingingly secured together and said interconnecting brace being pivotally secured to said horizontally extending portion, the upper end portion of said brace being curved inwardly adjacent its upper free end portion and adapted to be projected within a slot within said horizontally extending portion which is of greater extend than said curved end, said curved end being pivotally secured to said horizontally extending portion whereby the said end portion of said brace is adapted to have rotating movement in said slot about said pivotal connection, the opposite end of said brace being provided with means adapted to cooperate with means provided on the adjacent end of said upright whereby said brace may be adapted to be secured to said upright in a plurality of different operative positions upon said upright whereby said bracket is adapted for use upon various degrees of inclination of the work structure without change of position of the horizontally disposed member of the bracket."

"15. In a scaffold of the character described consisting of a plurality of floor board supporting brackets adapted to be mounted upon a structure to be worked upon, each bracket being generally triangular in form comprising an upright portion, an outwardly extending horizontally disposed portion, and an interconnecting brace, said upright and said horizontally disposed portion being hingingly secured together and said interconnecting brace being pivotally secured to said horizontally extending portion, the upper end portion of said brace carrying a socket portion having a pair of upwardly extending arms secured thereto, said arms having curved free ends which are adapted to embrace opposite side portions of said horizontally extending portion, a pivotal connection between said arms and said horizontally extending portion being made at their juncture, said arms adapted to have rotating movement about said pivotal connection with respect to said horizontally

disposed portion, the opposite end of said brace being provided with means adapted to cooperate with a sleeve telescoped over said upright, said brace being hingedly secured to said sleeve whereby said brace may be disposed in a plurality of different operative positions with respect to said upright whereby said bracket is adapted for use upon various degrees of inclination of the work structure without change of position of the horizontally disposed member of the bracket."

The references are:

Martin, 352,420, November 9, 1886;

Bartow, 355,911, January 11, 1887;

Guthat, 470,856, March 15, 1892;

Moore, 1,337,088, April 13, 1920.

It appears from appellant's application that his bracket is substantially triangular in shape, comprising an upright member adapted to be attached to a supporting structure, such as a cable, by means of a suitable hook, an outwardly extending horizontal member upon which scaffold boards are to be mounted, and an interconnecting brace. The upright member and the horizontally disposed member are hingingly secured together, and the interconnecting brace is pivotally secured to the outer end of the horizontally disposed member. The interconnecting brace and the upright member are so designed and arranged that they may be attached in a plurality of different operative positions; that is to say, the lower end of the upright member is provided with a series of perforations through which the interconnecting brace is adapted to be adjustably and pivotally secured to the upright member. Appellant's bracket, as stated in his specification, is adapted for use on work structures of various degrees of inclination, such as chimneys, stacks, tanks, and the like, and is so arranged that, by adjusting the connection between the interconnecting brace and the upright member, the horizontally disposed member may be kept in a horizontal position, thereby providing workmen with a horizontal platform regardless of the inclination of the structure on which work is being performed.

Claim 14 differs from claims 12 and 13 in that the upper end of the interconnecting brace is stated to be "curved inwardly adjacent its upper free end portion and adapted to be projected within a slot within said horizontally extending portion which is of greater extend than said curved end."

Claim 15 differs from claims 12, 13, and 14 in that the adjustable connection between the brace and the upright member comprises a sleeve telescoped over the upright member.

The patent to Martin relates to "Scaffolding-Brackets," and discloses a structure, triangular in shape, in which the brace is pivotally connected to the horizontal member and the upright member. The connection between the brace and the upright member is made adjustable by means of a plurality of vertically spaced perforations in the lower end of the upright member. The patent does not show a pivotal connection between the upright member and the horizontal member and, for that reason, the broad claims (Nos. 12 and 13) do not read on it.

The patent to Bartow relates to a tray attachment for bedsteads, and discloses a bracket so designed and arranged that a tray may be secured to the side rail of a bedstead "and held either horizontally or at any desired inclination and at any desired height, and either over the bed or at one side thereof." The patentee's structure is triangular in shape, having an upright member, a horizontal member, and a brace. The brace is pivotally connected to both the upright member and the horizontal member, and the upright member and the horizontal member are pivotally connected. The brace is adjustably connected to the upright member by means of a split collar or "sleeve" telescoped over the upright member.

The Bartow patent was cited for the purpose of showing the "sleeve" connection between the brace and the upright member.

The patent to Guthat relates to a scaffold bracket. The patentee's bracket is triangular in shape, having an upright member, a horizontal member, and a brace. The horizontal member is pivotally connected to the upright member, and the brace, although pivotally connected to upright member, is not adjustably connected thereto. The connection between the brace and the horizontal member is not pivotal.

The Guthat patent does not disclose the brace to be adjustably connected to the upright member and pivotally connected to the horizontal member. Therefore, claims 12 and 13 do not read thereon.

The patent to Moore relates to a scaffold bracket which is triangular in shape.

The patentee's structure has an upright member, a horizontal member, and a brace. The upright member and the brace are each pivotally connected to the horizontal member. The brace, although inclined throughout most of its length, has a short vertical section or "ear," as stated in the patent, which is pivotally mounted in a slot in the horizontal member. The opposite end of the brace is designed to be removably attached to the lower end of the upright member and is provided with a bifurcated portion having perforations therein corresponding to a perforation in the lower end of the upright member through which a bolt passes.

Claims 12 and 13 were rejected by the Primary Examiner on the patents to Guthat and Martin, the examiner stating that the patent to Guthat discloses an upright member, a horizontally extending member, and an interconnecting brace; that the patent to Martin discloses a similar structure, but, in addition, provides for an adjustable connection between the upright member and the interconnecting brace by means of which the horizontal member "may be maintained horizontal for various inclinations of the upright portion"; that the patentee Martin provides a free pivotal connection between the brace and the horizontal member "to accommodate the adjustable connection" between the brace and the upright member; and that, in view of the teaching of the Martin patent, it would not involve invention "to provide a similar adjustable connection between Guthat's upright" member and the brace and to make the connection between the brace and the horizontal member freely pivotal.

Claim 14 was rejected by the Primary Examiner on the patents to Guthat and Martin in view of the disclosure in the Moore patent of the short vertical section at the upper end of the brace being pivotally mounted in a slot in the horizontal member.

Claim 15 was rejected by the Primary Examiner on the patents to Martin and Guthat in view of the disclosure in the Bartow patent of the brace being adjustably attached to the upright member by means of a split collar or "sleeve" connection.

The Board of Appeals affirmed the examiner's rejection of the appealed claims for substantially the reasons stated in his decision.

It is conceded here by counsel for appellant that all of the primary elements in appellant's structure are old. It is contended, however, that as the references do not disclose appellant's precise arrangement of parts and as appellant's bracket is designed for use on stacks, chimneys, tanks, and the like of various sizes, and is capable of such use, whereas none of the reference brackets is capable of use on such structures, the appealed claims involve invention and are, therefore, patentable. In this connection, counsel contends that the introductory clause "In a scaffold of the character described," in each of the appealed claims is "the limitation that the invention relates to 'scaffolds particularly adapted for use on stacks, chimneys, tanks and the like * * * regardless of the degree of inclination of such structure,' and which may be folded into compact form, more particularly to enable it 'to be passed through small openings.'"

■ Such introductory clauses are, by the great weight of authority, held to be immaterial and of "no interpretive importance" in infringement cases, although the courts frequently turn to the specifications for limitations not expressed in the claims of patents in order to hold such claims valid. See National Tube Co. v. Mark et al., 6 Cir., 216 F. 507, 515 to 521, inclusive. Furthermore, such introductory clauses have been held not to be limitations in claims in applications for patents since as early as 1869. Several decisions of Commissioners of Patents holding to that effect are reviewed and quoted from in the National Tube Co. case, supra.

In the case of In re Garratt, 63 F.2d 113, 115, 20 C.C.P.A. (Patents) 878, 881, it was held that the introductory clause in claims in an application for patent "In a device of the class described" was merely introductory. That it was not a limitation in the claims there involved, and should be disregarded.

We hold, therefore, that the introductory clause in each of the claims here on appeal is not a limitation as to the structure thereinafter defined, and that the claims are not limited to structures designed to be used on stacks, chimneys, tanks, and the like.

■ The last clause in each of the appealed claims is purely functional, and, therefore, may be disregarded in the consideration of the patentability of the claims.

The question before us is whether the structure defined by the appealed claims is patentable over the structures disclosed in the references of record.

Counsel for appellant has devoted a considerable portion of his brief to an explanation of the differences between the bracket disclosed in appellant's application and those disclosed in the prior art. However, the question to be determined is not whether appellant's application discloses an invention, but rather whether the appealed claims define patentable subject matter.

Each of the references of record, except the Bartow patent, relates to brackets for scaffolds.

The Martin patent discloses the use of pivotal connections between the brace and the horizontal member and the brace and the upright member.

The Guthat patent discloses a bracket in which the horizontal member is pivotally connected to the upright member and the brace.

The Martin patent also discloses an adjustable connection between the lower end of the brace and the upright member, and, although the patentee does not expressly so state, it is obvious from his structure that, by means of the adjustable connection between the brace and the upright member, the horizontal member may be kept in a horizontal position, thereby providing workmen with a horizontal platform.

The structures in both the Martin and Guthat patents may be folded into compact form.

It is true that the patentee Martin states that his bracket may be secured to the studding of a frame building; that the patentee Guthat states that his bracket may be attached to buildings; and that neither of those patentees states that his bracket is adapted for use on stacks, chimneys, tanks, and the like, having various degrees of inclination. However, none of the claims here on appeal is limited to a bracket for use on such structures and, so far as the claims are concerned, appellant's bracket may be used for the same purpose as those of Guthat and Martin.

We are in accord with the views expressed by the Primary Examiner, and concurred in by the board, that claims 12 and 13 are not patentable over the disclosures in the Martin and Guthat patents.

We are also in accord with the holdings of the Patent Office tribunals that claim 14 is not patentable over the Martin and Guthat patents in view of the disclosure in the patent to Moore of a brace having a short vertical section pivotally mounted in a slot in the horizontal member, one of the limitations contained in that claim.

As hereinbefore noted, claim 15 differs from the other appealed claims in that the adjustable connection between the brace and the upright member comprises a sleeve telescoped over the upright member. Such a connection is clearly shown in the patent to Bartow.

Counsel for appellant argues that the Bartow patent is from a nonanalogous art because it does not relate to a scaffold bracket, but to a bracket designed to be detachably secured to the side rail of a bedstead as a support for trays or other flat objects, and it is the contention of counsel that claim 15, which calls for a sleeve connection between the brace and the upright member, therefore involves invention.

We have given the argument of counsel careful consideration but are of opinion that it would not require the exercise of the inventive faculties to substitute the Bartow sleeve connection for the particular pivotal connection disclosed in the patent to Martin, and that such sleeve connection is not from a non-analogous art. See In re Lee J. Voorhees, 40 F.2d 773, 17 C.C.P.A. (Patents) 1162; In re Christian L. Schneider, 47 F.2d 970, 18 C.C.P.A. (Patents) 1114; In re Raleigh, 62 F.2d 200, 20 C.C.P.A. (Patents) 751. We hold, therefore, that claim 15 is not patentable over the references of record.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.