49 CCPA

## Application of Stephen A. SZUMSKI.
### Patent Appeal No. 6808.

United States Court of Customs
and Patent Appeals.
May 18, 1962.

Norton S. Johnson, Stamford, Conn. (William P. Spielman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

KIRKPATRICK, Judge.

■ This appeal is from the decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of claims 1 through 9 of the appellant's application Serial No. 446,967, filed July 30, 1954, for "Method for Producing Antibiotics." At the hearing, the appellant withdrew the appeal as to claim 1, leaving claims 2 through 9 for our consideration.

Claim 2, which is taken as illustrative, reads as follows:

"2. An improved process for producing tetracycline antibiotics which comprises propagating a microorganism of the genus *Streptomyces* in a medium comprising a source of organic nitrogen, trace amounts of inorganic ions and a quantity from about 1% to about 10% grain meal containing from about 65% to 75% starch replacing an equivalent quantity of refined carbohydrate on a weight per weight basis."

The references relied on are:

Moyer    2,443,989    June 22, 1948.
Duggar    2,482,055    Sept. 13, 1949.

A publication entitled "The Actinomycetes," by Waksman, published by Chronica Botanica, pages 100 through 105 and 191, is also reproduced in the record.

As is apparent from the illustrative claim, the application is directed to a process for propagating the appropriate microorganisms in a specified medium to produce tetracycline antibiotics. The appellant states that prior processes for producing chlortetracycline, tetracycline and oxytetracycline by the propogation of their respective organisms requires three general classes of materials for maximum production; namely, a source of organic nitrogen such as corn steep liquor, fish meal, meat extracts and like substances; a source of carbohydrates such as starch or sugar; and a supplement containing inorganic ions such as ammonium, iron, magnesium, manganese, potassium, zinc, phosphate, and sulfate. He further states that the usual sources of carbohydrates have been starch or sugar.

The appellant's discovery is referred to in the application as follows:

"I have now discovered that the grain meals such as corn, wheat, barley, rye and rice can be used as carbohydrate sources in fermentation media for the production of tetracycline antibiotics. The total substitution of grain meal for starch as a carbohydrate source on a weight per weight basis without a corresponding decrease in antibiotic yield is a most surprising and unexpected feature of my invention. Since corn flour constitutes approximately 65% to 75% carbohydrate, the total substitution of this ingredient in place of starch without a corresponding decrease in antibiotic yield is most unforeseeable. Inasmuch as the carbohydrate availability in grain meal is only about $\frac{3}{4}$ of that which is available in starch, under normal circumstances, one skilled in the art would expect that in order to get an equivalent yield of chlortetracycline, oxytetracy-

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

cline, or tetracycline one would necessarily have to increase the grain meal level to the same carbohydrate level as that of starch. I have discovered that this increase is not at all necessary. In fact, the replacement of grain meal for starch on a weight per weight basis not only results in equivalent yields of antibiotic but, in some instances, results in considerably higher yields."

The Duggar patent discloses a process for the production of aureomycin, identified by the examiner as chlortetracycline. It describes the use of a nutrient medium containing, "in common with media in which other fungi are grown for the production of antibiotic substances," a source of carbon such as a soluble carbohydrate, a source of nitrogen, certain mineral salts such as phosphates, and traces of various metals usually found as impurities in the other constituents. It specifically discloses that the carbon source may be ordinary starch, the soluble starches, or various sugars. It also discloses that corn steep liquor may be used as a source of nitrogen.

The Moyer patent relates to the production of the antibiotic penicillin by culturing or fermenting penicillin producing fungus organisms in a nutrient medium. Among the materials disclosed by the patent as suitable carbohydrate sources in the nutrient medium are modified and unmodified starch and grain mashes. Concerning the latter, the patent states:

"Grain mashes, such as corn, wheat, or barley mash, either malted or unmalted, may also be used. Such mashes are particularly suitable because they provide at a low cost not only starch and dextrins, but also an appreciable quantity of minerals, growth factors, and proteinaceous material which are favorable to penicillin production and stabilization in the fermentation medium. Some of the grain mashes, as well as some whey concentrates, are sufficiently rich in protein that extra proteinaceous adjuncts need not be added to the medium. Various mixtures and combinations of the above carbon sources may be used."

The Waksman publication was referred to by the examiner in making the statement that the cultures employed in the appellant's process had been shown to be capable of utilizing whole grain meals. Although the board apparently took note of that statement in summarizing the examiner's position, the board's decision does not mention the publication by name.

The board held the appealed claims to be unpatentable over Duggar in view of Moyer. It regarded Moyer as including a clear teaching that grain meals may be used in place of pure starch in nutrient media for the cultivation of an antibiotic substance. In view of that teaching, it held it would be obvious to those skilled in the art that grain meals could be used in place of starch as the source of carbon in the nutrient media used by Duggar for producing aureomycin.

The appellant urges that his process is patentable "because it eliminates from the prior art the step of refining the carbohydrate without eliminating its function." He also contends that his process provides an unexpected result which demonstrates that it amounts to patentable advance in the art. In support of those contentions, the appellant refers to an affidavit which he provided reporting tests wherein use of corn flour in place of an equal weight of starch in nutrient for producing chlortetracycline resulted in approximately 15% greater yield.

It is clear that the board correctly regarded the issue to be whether it was obvious to substitute grain meals for the starch of Duggar as a source of carbon in Duggar's process for producing a tetracycline antibiotic. The fact that the substituted material has not been refined while the material it replaces has, does not justify the appellant's strained analysis of his procedure as

eliminating a step in the prior art process.

The facts here contrast sharply with those in Lawther v. Hamilton, 124 U.S. 1, 8 S.Ct. 342, 31 L.Ed. 325, discussed at length by the appellant. In that case, the prior art taught extraction of oil from oil seeds by crushing the seeds between revolving rollers and then passing them under heavy stones or mullers with the addition of water. As stated by the court, the inventor found that "by altogether omitting one of the steps of the former process—the grinding and mixing under the muller-stones—and mixing in the mixing-machine by means of steam, a great improvement was effected in the result." In the present case, the steps in the manufacture of the food selected for the microorganism are no more a part of the process sought to be patented than are the steps in the manufacture of the steel used in the machine intended to carry out the process of the Lawther case. The use of meal grain instead of starch can hardly be regarded as constituting a part of the process claimed.

The appellant, in referring to Moyer's disclosure of the use of grain meals in making penicillin, suggests that "much more than the inclusion of the words 'grain meals' in a long list of nutrients would be needed" to teach the substitution of grain meals in the production of other antibiotics. However, in referring to grain mashes as "particularly suitable because they provide at a low cost not only starch and dextrins, but also an appreciable quantity of minerals, growth factors, and proteinaceous material which are favorable to penicillin production and stabilization in the fermentation medium," Moyer has clearly done much more than merely include the words "grain meals" in a long list of nutrients. He has pointed out advantageous features of grain mashes which would hardly be ignored by one working in the art.

■ Whether a combination of references is proper depends upon what they would reasonably teach a person of ordinary skill in the art. In re Krogman, 223 F.2d 497, 42 CCPA 1037. We are convinced that Moyer's disclosure would make it obvious to such person to employ grain meals in place of starch in Duggar's process for culturing aureomycin. Certainly, nothing has been pointed out in the record which would demonstrate that a person of ordinary skill would have reason to believe that the substitution would not work.

In re Shaffer, Jr., 229 F.2d 476, 43 CCPA 758, cited by the appellant, merits little comment here. In that case, a rejection on a combination of references was found improper on the basis that the applicant had attained a different result by discovering and solving a problem which was wholly unrecognized by the prior art.

It is true, of course, that the references here would not teach exactly how effective the substituted grain meals would prove to be or what would be the optimum quantity to be used. However, a substitution of such meals for the starch which supplies carbon in Duggar on substantially a weight for weight basis would seem particularly obvious, although common sense would dictate that one should not overlook the possibility that the results might be improved with variations of that ratio.

■ Where the change over the prior art is obvious, as here, 35 U.S.C. § 103 prohibits the grant of a patent. The mere fact that the results attained may be unexpectedly good is not controlling. In re Rau, 253 F.2d 437, 45 CCPA 852; In re Libby, 255 F.2d 412, 45 CCPA 944; In re Paul, 252 F.2d 306, 45 CCPA 793, and cases cited therein. We, therefore, think the board correctly found that the appellant's affidavit was not persuasive of patentability.

For the foregoing reasons we affirm the decision of the Board of Appeals.

Affirmed.

MARTIN, Judge, sat but did not participate because of illness.