**Application of Donald I. GONSER.**
**Patent Appeal No. 7064.**

United States Court of Customs
and Patent Appeals.
Feb. 13, 1964.
Rehearing Denied April 1, 1964.

---

Robert G. Mentag, Detroit, Mich., (Albert W. Rinehart, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and AL- MOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1 and 2 in application serial No. 620,482, filed November 5, 1956, entitled "Electrotherapy Apparatus."

The invention is a device for treating humans by electrotherapy. It is in essence a means for producing radio frequency radiation for passage into a patient allegedly to stimulate glandular activity. Appellant's specification states:

"It is well known that persons subjected to radio frequency radiations experience an increase in endocrine glandular activity and it is thought that stimulation of certain glands provides relief to persons suffering from a number of ailments. * * * Machines of known construction are not believed to be sufficiently flexible in use to permit optimum results to be obtained upon patients requiring varying degrees of treatment. Moreover, some machines are likely to subject a patient to severe and harmful electrical shocks and/or radio frequency burns in the event of electrical failure of parts of such machines, or by misuse on the part of the operator.

"An object of this invention is to provide electrotherapy apparatus utilizing low voltage, low frequency energy modulated by superimposed radio frequency voltages to obtain penetration of a patient's tissues by radio frequency radiations."

The appealed claims read:

"1. Electrotherapy apparatus comprising low voltage, pulse energy generator means; radio frequency oscillator means; means for feeding the pulse energy of said generator means to said oscillator means so that the output of the latter comprises discrete bursts of radio frequency modulated pulses having wave form characteristics similar to the pulse energy of said generator means; means for radiating the output of said oscillator means and means for varying the frequency of said oscillator means.

"2. Apparatus as set forth in claim 1 including means for varying the pulse energy of said generator means."

Simply described, appellant's apparatus consists of three principal parts: (1) a full wave rectifier which produces pulsed sinusoidal[1] unidirectional current, claimed by appellant as "low voltage, pulse energy generator means"; (2) vacuum tube oscillator for generating a high frequency voltage wave form; and (3) a flexible, rubber-covered metal plate which serves as an electrode for radiation transmission, claimed by appellant as "means for radiating the output of said oscillator means." A variable transformer ("Variac") in the generator circuit and means for varying the capacitance in the LC tank circuit portion of the oscillator permit the operator to adjust the magnitude of both generated unidirectional current pulses and the frequency of radiation produced by the oscillator, respectively.

The apparatus allegedly functions as follows: Pulsed unidirectional current from the generator is fed into the radio-frequency oscillator wherein high frequency voltage waves are superimposed upon the pulse-wave pattern. The resultant pulses then radiate from the rubber-covered electrode plate to the patient's body. Appellant alleges that his device is free from harmful characteristics of prior art machines which cause electrical shocks and radio-frequency burns.

The sole ground of rejection is unpatentability under 35 U.S.C. § 103, over the following reference:

Milinowski 2,276,995 Mar. 17, 1942

Milinowski teaches an electrotherapy device consisting of the same three principal parts described above. Milinowski's generator produces unidirectional current pulses as does appellant's; however, rather than *sinusoidal* wave patterns, Milinowski's generator produces discrete bursts of square wave pattern,[2] so formed by periodic energization of rectifier triodes by means of a rotating contactor with projecting studs which contact knife-edge points to complete the generator circuit.[3] The generator is coupled with a radio frequency oscillator, the latter terminating in two electrodes from which radiations are emitted. In describing the operation of his device, Milinowski states that pulses from the generator are applied via transformer to the plates of the oscillator tubes of the high frequency oscillator circuit while the latter "functions to supply high voltage ultra high frequency waves *during each pulse*" (emphasis ours) to the outlet electrodes. Milinowski's device does not provide for variable control of either pulse magnitude or frequency of high frequency waves.

The examiner stated in his answer: "Claim 1 stands rejected as unpatentable over Fig. 1 of Milinowski. The claim is applied to the reference as follows. Milinowski discloses an electrotherapy apparatus comprising low voltage, pulse energy generator means * * *, radio frequency oscillator means * * *, means * * * for feeding the pulse energy of said generator means to the oscillator means and means * * for radiating the output of said oscillator means. As for the functional statement 'so that the output of the latter comprises discrete bursts of radio frequency modulated pulses having wave form characteristics similar to the pulse energy of said generator means,' it is noted that Milinowski states * * * that the pulses applied to the oscillator causes the oscillator to supply high

---

1. Since unidirectional current is involved, the wave form takes the shape of contiguous series of half-loop sine waves.

2. Appellant, too, contemplates use of, inter alia, square wave form voltage patterns. The specification states:

 "The wave form produced by the generator * * * need not necessarily be restricted to the half loop arrangement just described, but may be changed where desired by the substitution for the arrangement shown of saw tooth, *square wave*, or other known wave form generators." [Emphasis ours.]

3. Pulse duration and frequency are thus functions of the thickness of the studs and rotation velocity of the contactor, respectively.

frequency waves *during each pulse* to the electrodes * * *. This clearly indicates that the radio frequency output of the oscillator is superimposed upon the pulses from the pulse producing circuit and thereby results in the generation of an output with the shape of the output pulses "similar" to the pulses from the pulse producing circuit. In other words, the statement of function recited in the claim is, of necessity, inherent in the apparatus of Milinowski. It is seen, therefore, that Milinowski meets the functional as well as the structural limitations recited. With regard to the last means recited in the claim, i. e., 'means for varying the frequency of said oscillator means,' it is quite obvious that the frequency of the oscillator * * * of Milinowski may be varied by changing the value of the appropriate element such as capacitor * * * or inductance * * *. To make a circuit element such as a capacitor, inductor, resistor, etc., adjustable is an expedient requiring no inventive concept since it produces no new or unexpected results.

\* \* \* \* \* \*

"Claim 2 stands rejected as unpatentable over Milinowski. Claim 2 adds the limitation of 'means for varying the pulse energy of said generator means'. Milinowski states * * * that the pulse width (and thereby the pulse energy) of the pulse generator is determined by the width of [the] stud * * * and speed of [the] contactor * * *. It is obvious that either characteristic may be changed as desired to produce a predetermined pulse width."

The board fully accepted the examiner's position, finding it necessary to add but the following:

"The provision in the reference of variable frequency determining components for the radio frequency oscillator, for the purpose of enabling the frequency of said oscillator to be adjusted as desired, would represent merely a conventional oscillator expedient, of which we may well take judicial notice. In this sense, in conformity with the view of the Examiner, we see nothing beyond obvious adoption of an old and known feature, for merely expected results, in such provision for Milinowski.

"Whether that portion of claim 1 reading 'so that the output—pulse energy of said generator means', * * * be regarded merely as functional in character, or as having some structural connotation as part of the specified function for the feeding 'means' involved (see In re Chandler, 45 CCPA 911; 117 USPQ 361; 254 F.2d 396; 1958 CD 291; 732 OG 274), would appear to be immaterial here, since in any case a wave form within the terms of said claim portion, and thus structure for producing the same, are disclosed in the reference. The oscillator * * * being controlled through [the] transformer * * * in accordance with the pulses from low frequency pulse generator * * * will clearly have an output comprising high frequency oscillations with an envelope of the [square wave] pulse form * * *. Thus, there are modulated pulses in the sense of pulses produced by a modulation action, these are in discrete bursts of radio frequency energy, and they have the form corresponding to that of the low frequency pulses, as represented by said [square wave form] * * *. This is all that is required by the language of the involved part of the claim."

Appellant argues that Milinowski neither teaches nor suggests the following aspects of the claimed invention: *low* voltage generator means; superimposition of high frequency voltage waves on low voltage pulses; means for varying both the frequency of high frequency waves of the oscillator and the pulse

energy of the generator, i. e., variable capacitance and variable rectifier feed ("Variac").

For reasons hereinafter stated, we see no merit in appellant's arguments. As to *low* voltage generator means, appellant states that Milinowski's apparatus generates *high* voltage whereas his device is disclosed and claimed as a *low* voltage generator. In this regard, the examiner stated in his answer:

"The 'low voltage, plus energy generating means' reads on the generator * * * of Milinowski. It is clearly obvious that the voltage from this generator is 'low' from [the disclosure] * * * of Milinowski, wherein it is stated that such voltage is *stepped up* before it is applied to the plates of the oscillator tubes."

The solicitor adds in his brief that appellant's disclosure sheds no light on the final output voltage contemplated by appellant; that the only relevant disclosure states "Variac" output voltage to be from 0 to 135 volts. Plate voltages in the rectifier diodes are not disclosed, nor does appellant disclose the voltage of his oscillator output. The solicitor further notes that Milinowski employs conventional 110 volt alternating current; that the generator through transformers may deliver current at up to 3000 volts; and that Milinowski suggests the use of a step-down transformer with the pulse generator.

Because of the paucity of disclosure of appellant's voltage parameters, we are unable to conclude that the relative term "low" with relation to voltage of generated pulses patentably distinguishes appellant's device from that of Milinowski. We are unable to find that appellant operates in voltage ranges significantly different from those taught or suggested by Milinowski.

As to appellant's argument concerning superimposition of high frequency volt-age waves on low voltage pulses, we note, as did the board, that the claims call only for "means for feeding the pulse energy of said generator means to said oscillator means so that the output of the latter comprises *discrete bursts* of *radio frequency modulated pulses* having wave form characteristics *similar to the pulse energy* of said generator means." (Emphasis ours.) The examiner stated that Milinowski's apparatus inherently produces such bursts. The board noted that Milinowski's modulated wave form would have the same envelope as the generated pulses, i. e., square, which is all the claim requires. Appellant's arguments before us in no way rebut either the examiner's or the board's position, with which we agree.

Finally, appellant contends that it is unobvious to use a variable capacitor and a "Variac" in his apparatus since Milinowski does not suggest their need. Appellant argues that one skilled in the art would not make the pulse generating means and radio frequency generating means variable without appellant's teaching that such is desirable, and that appellant attains unexpected results with his apparatus.

We are aware that determining obviousness under 35 U.S.C. § 103 often requires consideration of the problem solved by an invention as well as the means for solving such problem. See In re Conover, 304 F.2d 680, 49 CCPA 1205. However, assuming, arguendo, that appellant has solved a problem in the electrotherapy art, it does not follow that the means employed in the solution are unobvious. The "Variac" is a notoriously old device for varying voltage, as is the variable capacitor in circuits for varying frequency. Unobviousness appears to be urged by appellant on the basis of his determination that in electrotherapy different patients respond to different radiation frequencies.[4] The

---

4. Appellant's brief states that effective therapy requires that the radiations emitted by the apparatus be *in resonance with the body tissues sought to be affected.* Since resonance frequencies must be empirically determined with each patient, it is necessary to provide apparatus with variable frequency and power adjustment.

claims before us, however, define *apparatus* which differs from the prior art only in notoriously old elements, not processes of treatment. In our view the *apparatus* claimed is obvious within the meaning of Section 103.

As for alleged unexpected results in using the "Variac" and a variable capacitor, suffice it to say that the inclusion thereof in electrotherapy apparatus results simply in *variable* pulse generation and *variable* frequency from the oscillator. There is nothing "unexpected" in this.

The decision of the board is affirmed.

Affirmed.