51 CCPA

**Application of William D. LAWTHER.**

**Patent Appeal No. 7165.**

United States Court of Customs and Patent Appeals.

May 14, 1964.

Walter L. Schlegel, Jr., Ralph M. Faust, Chicago, Ill., for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from a decision of the Board of Appeals affirming the examiner's rejection of claims 14–18 of appellant's application serial No. 683,475 filed September 12, 1957 for improvements in shell molding. No claim has been allowed.

Appellant's application relates to a material for making shell molds and cores for producing metal castings. Shell molds and cores are said to be generally formed of a mixture of molding-sand particles and thermosetting phenolic resins. The resins may be of the one-stage or two-stage types and are prepared by refluxing together phenol and a solution of formaldehyde or formaldehyde polymers in the presence of an acid or basic catalyst.[1]

In the application it is stated that, when using the two-stage resin in preparing the shell molds, it has been the practice to apply the resin, along with

---

[1]. Appellant states that in a one-stage resin all of the formaldehyde necessary to complete the reaction and make the resin thermosetting is included in the initial reaction vessel, while in a two-stage resin the formaldehyde is added in two separate stages. Appellant in his brief indicates that the flow characteristics of one-stage resins "do not accommodate adequate coverage of the sand particles by the resin" and that "The resulting sand-resin mixes are therefore incapable of developing sufficient bonding strength to be practicable for the formation of molds in the shell mold industry."

hexamethylenetetramine, in solution to the sand particles. The hexamethylenetetramine, employed as the hardening agent for two-stage phenol-formaldehyde resins, apparently makes the two-stage resins thermosetting upon use. Is is said that shell molds made from such two-stage resins have not been satisfactory in producing low carbon, low alloy steel castings since those castings are subject to characteristic surface defects such as roughness, porosity, blow holes and pock marking. Appellant in his application states:

"It has been discovered according to the present invention that the characteristic shell mold defects are caused primarily by the release of gases, principally nitrogen and ammonia (the latter breaking down into nitrogen and hydrogen), when the molten metal contacts the shell mold or core. It has also been discovered that the source of ammonia, and the principal source of nitrogen, is the hexa [hexamethylenetetramine] which is manufactured from formalin [an aqueous solution of formaldehyde] and ammonia."

Appellant's invention is said to provide shell molds and cores comprising a mixture of sand particles and a fast thermosetting resin obtained by mixing, in the proper proportions, one-stage and two-stage resins of phenol and formaldehyde without the addition of hexamethylenetetramine which was included as a hardening agent.

Claim 14, illustrative of the appealed claims, reads:

"In a material for making shell molds and cores for producing metal castings, the combination of: molding-sand particles bonded together by a thermo-setting resin composition consisting essentially of a thermo setting resin consisting of the reaction product of formaldehyde and phenol in a molar ratio of more than 1 to 1 and a thermoplastic resin consisting of the reaction product of formaldehyde to phenol in a ratio of less than 1 to 1, the ratio of formal-

dehyde to phenol in said thermo setting resin composition being at least 1 to 1."

Claims 15–18 are dependent on claim 14 and are specific to the solvent for the resin and the proportions of the constituents of the shell mold material.

The references relied on are:

Drumm et al. 2,806,832 Sept. 17, 1957
Hoyt 2,829,982 Apr. 8, 1958
British patent 623,271 May 16, 1949

The Hoyt patent relates to "non-absorbent granules," e. g., sand, coated with a film of a thermosetting resin binder, which are said to be "particularly useful in connection with compositions for use in shell and core molding." The resin is either in the form that may be cured merely on heating or one such as a two-stage condensation product of formaldehyde and phenol, which requires the addition of hexamethylenetetramine or other agent "commonly used in the art for hardening the particular kind of resin selected."

The Drumm et al. patent also relates to compositions for use in the preparation of shell molds. The compositions are attained by intimately blending sand with a liquid phenolic resin composition and with a minor amount of an amide. The phenolic resin may comprise either a one-stage resin which Drumm et al. characterize as a heat-hardenable resin, or a permanently fusible resin, or a mixture thereof. The permanently fusible phenolic resins are rendered heat-hardenable when used in conjunction with a hardening agent such as hexamethylenetetramine. The patent states that "when permanently fusible resins are used, a hardening agent should be present." In a modified form of the Drumm et al. invention, a permanently fusible phenolic resin which has been premixed with the hardening agent is added to a preblend of sand and a liquid phenolic resin composition which is preferably either a one-stage phenolic resin of a low order of condensation which contains less than about 10% by weight of water or an organic solvent

solution of a permanently fusible phenolic resin.

The British patent concerns "a new type of resin" prepared from phenol and formaldehyde and relates to molded articles made therefrom. The molded articles are said to be used in contact with foodstuffs. The British patent states that in the past both the "one-stage" and the "two-stage" phenolic resins have been used in industry, the two-stage phenolic resin requiring the presence of a material such as hexamethylenetetramine to give the resin a sufficiently fast cure to be suitable for the manufacture of thermosetting molding powders. It is indicated, however, that the introduction of the hexamethylenetetramine made the resulting thermosetting products less economical to produce as compared with the production of thermosetting products from one-stage phenolic resins requiring no hexamethylenetetramine. Moreover, it is stated in the British patent that hexamethylenetetramine decomposes to ammonia under heat treatments used both in the preparation of the molding powder and in the final pressing operation. The presence of such ammonia is said to be undesirable since it causes an unwanted odor and taste in the finished moldings. The "new type of resin" in the British patent is a mixture of a one-stage phenol-formaldehyde resin and a two-stage phenol-formaldehyde resin. The speed of hardening of the mixture is said to be sufficiently great without the addition of hexamethylenetetramine. When the mixture is used in a molding powder together with a filler such as woodflour, the mixture is said to give moldings of excellent hardness on removal hot from the mold.

The examiner rejected the appealed claims as unpatentable over Hoyt in view of the British patent and Drumm et al. In view of the teaching of Drumm et al. of using a thermosetting phenol-formaldehyde resin mixture for binding together sand particles in a composition for use in shell and core molding, the examiner considered that no "invention" was involved in using the particular resinous mixture shown by the British patent as the resinous binder of the composition disclosed by Hoyt.

The board was of the opinion that the examiner's rejection was without reversible error. It considered the British patent "particularly enlightening" in disclosing that the combination of the one-stage and two-stage phenolic resins exhibits a hardening speed sufficiently great to permit application of the composition without the addition of a material such as hexamethylenetetramine.

The board was further of the opinion that the rejection of the appealed claims was sustainable on Drumm et al. alone. It considered that from the language of the Drumm et al. patent the use of any hardening agent such as hexamethylenetetramine was intended to be optional.

In denying appellant's petition for reconsideration of its decision, the board stated:

"Appellant's argument for his interpretation of the Drumm et al. patent might be accorded greater weight if it were not for the fact that claims [of the Drumm et al. patent] generic to one-stage and two-stage resins, namely claims 1, 4, 5 and 6, do not recite a hardening agent.

\* \* \* \* \* \*

"The third point [of appellant] is based upon the contention that since none of the references recognized the problem, they could not be said to suggest a solution. The British patent, however, shows that the hardening agent will produce gas. That possible gas formation is suspect in shell molding defects is evidenced by the fact that elimination of nitrogen was considered by the 'Steel Foundries Association of America Report' to which appellant referred on the last page of the brief. We might add that since appellant failed to include a copy of the report, our knowledge of its content is limited to appellant's comments thereon."

Appellant argues that Hoyt nowhere suggests that one-stage and two-stage resins can be combined in the manner set forth in appellant's claims. Appellant contends that while it is true that the British patent teaches the combination of a one-stage and two-stage resin without the addition of a hardening agent, the mixture of resins in the British patent is utilized as the molded material per se of small objects having a sufficiently low odor and taste to be used in contact with foodstuffs. Nowhere, it is urged, does the British patent suggest that the mixture of resins described therein can be used as a constituent of a material in which metal is to be cast, nor that said mixtures of resins may be utilized in shell molds intended for the production of metal castings free from shell mold defects. Appellant contends that the British patent certainly "did not recognize that any problem existed in the casting of metal in shell molds and therefore could not be said to suggest a solution for this problem." Appellant argues that the board in referring to "the 'Steel Founders Society of America' report" as evidence that gas formation was a suspect in shell molding defects neglected to say that this concept while being considered in the report was completely rejected. Reference is made by appellant to page 11 of the report which states in part:

"* * * Thus, in regular shell molds which have been properly cured all the hexa [hexamethylenetetramine] has apparently decomposed during the curing period, and the defects occurring on castings made in these molds are not due to residual nitrogen."

Appellant argues that the Drumm et al. patent teaches only the use of (i) a one-stage heat hardenable resin, *or* (ii) a permanently fusible resin plus a hardening additive, *or* (iii) a one-stage hardenable resin mixed with a permanently fusible resin plus a hardening additive.

The sole issue here is patentability of the appealed claims over the Hoyt, Drumm et al. and British patents. The first rejection we will consider is the re-jection of the appealed claims "over Hoyt in view of the British patent and Drumm et al.," the rejection apparently considered by the board to be for obviousness under 35 U.S.C. § 103.

In a 35 U.S.C. § 103 rejection, this court has stated that "Whether a combination of references is proper depends upon what they would reasonably teach a person of ordinary skill in the art." In re Szumski, 302 F.2d 753, 49 CCPA 1117. We are convinced that a person of ordinary skill in the shell molding art, with the teachings of the Hoyt, Drumm et al. and British patents before him, would find it obvious to substitute, in the composition of the Hoyt patent, the phenolic resinous composition of the British patent which does not require a hardening agent for the phenolic resinous composition of the Hoyt patent which does require a hardening agent.

All three patents relate to compositions for making molded articles and all are concerned with a thermosetting phenol-formaldehyde resinous composition. The Hoyt patent shows a mixture of sand and a two-stage phenolic resin for use in making shell molds. Both the Drumm et al. and the British patents disclose a mixture of a one-stage and a two-stage phenolic resin and the Drumm et al. patent, like the Hoyt patent, is concerned with compositions for making shell molds. Admittedly, the compositions in the Hoyt patent require a hardening agent in conjunction with the use of a two-stage or permanently fusible phenolic resin, while the Drumm et al. patent may be interpreted in a similar way. Also, the British patent is not concerned with compositions for making shell molds nor does it relate specifically to a sand composition. However, in the British patent, in referring to the prior art, it is stated:

"* * * In order to give hardenable [two-stage phenolic] resins of sufficiently fast cure to be suitable for the manufacture of thermosetting moulding powders, it is necessary to add a formaldehyde donor, e. g. hexamethylene tetramine. * * * Since the introduction of

formaldehyde by donors is higher in cost than its introduction in the form of commercial formalin, thermosetting products from novolaks [two-stage phenolic resins] are less economical to produce than those from resols [one-stage phenolic resins]. Moreover, when hexamethylene tetramine is used as the donor, it decomposes under heat treatments used both in the preparation of the moulding powder and in the final pressing operation. During the decomposition, ammonia is formed * * *."

The British patent continues:

"The present invention is concerned with a new type of resin [mixture of a one-stage and a two-stage phenolic resin] * * * the speed of hardening of these resins is sufficiently great as to permit their application without the addition of formaldehyde donors. This makes the use of these resins very economical, * * *.

* * * * * *

"When it [mixture of one-stage and two-stage phenolic resin] is used in moulding powders together with a filler such as woodflour, but without any formaldehyde donor, it gives mouldings of excellent hardness on removal hot from the mould. * *"

Such teachings, we think, clearly show the desirability of producing molding compositions containing a thermosetting phenolic resinous composition without a hardening agent, e. g. hexamethylenetetramine which is a known gas producing agent, that a mixture of a one-stage and a two-stage phenolic resin will harden adequately without a hardening agent and that when an inert filler material such as woodflour is used in conjunction with the resinous mixture the hardening ability of the mixture remains unaffected. Accordingly, we think the substitution of the phenolic resinous composition without the hardening agent of the British patent for the phenolic resinous composition with the hardening agent of the

Hoyt patent in the sand-phenolic resinous composition of the Hoyt patent would be obvious to a person of ordinary skill in the shell molding art.

We are aware that the determination of obviousness under 35 U.S.C. § 103 requires consideration of the problem solved by an invention as well as the means for solving such problem. In re Gonser, 327 F.2d 500, 51 CCPA ——. However, assuming arguendo that appellant has discovered the cause of a problem in the casting of metal in shell molds, it does not necessarily follow that the composition he provides to solve that problem is unobvious.

Since we think that the appealed claims are unpatentable over the Hoyt patent in view of the Drumm et al. and British patents, we find it unnecessary to consider the board's rejection of the appealed claims on the Drumm et al. patent alone.

For the foregoing reasons the decision of the board is affirmed.

Affirmed.