**Application of John P. GLASS.**
**Patent Appeal No. 8813.**

United States Court of Customs and Patent Appeals.
Feb. 8, 1973.

---

John F. A. Earley, Philadelphia, Pa., James W. Dent, Washington, D. C., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

MARKEY, Chief Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–3, 6–12, 15–20, and 27–41. We affirm as to some claims and reverse as to others.

## THE INVENTION

Appellant's application, entitled "Rocket and Propellant Therefor", serial number 720,429, filed January 23, 1968, discloses a rocket shell formed of abutting rings and filled with a solid propellant arranged in concave layers, each layer connected to a ring, and a series of concave, foraminous screens embedded in the propellant and attached to the rings, the propellant gases being focused toward the open tail of the rocket. As propellant layers are consumed their associated screens and rings are dispensed and the rocket diminishes in length as it flies.

The parties grouped the appealed claims in relation to particular features of the disclosure. For clarity we list the claims as grouped by appellant.

### THE "SCREEN" GROUP

Appellant's "screen" group includes claims 1, 2, 15, 18, 19, 29, 30, 31, 35, 36, 39, 40, and 41. Claims 1 and 40 represent the disparate breadth of claims within the group:

1. A rocket comprising a series of rings arranged in abutting relationship to form an enclosing wall having a nose and a tail end, a rocket motor within said wall including a solid propellant, said tail end adapted to have a burning surface which travels toward the nose end when the rocket is in flight, said propellant being arranged in layers with each layer connected to one of said rings, and a series of foraminous screens imbedded in the propellant between said layers and attached to said rings to transfer stress thereto and hold the rocket together, said screens presenting a concave surface to said tail end to focus the propellant gases and control the shape of the burning surface by spreading the burning surface laterally.

40. A rocket comprising a series of rings arranged in abutting relationship to form an enclosing wall having a nose and a tail end, and a solid rocket propellant contained within said wall and presenting a burnable concave surface to said tail end.

### THE "RE-IGNITION" GROUP

The claims are numbered 3, 20, and 32, of which claim 3 is the only independent claim:

3. A rocket comprising a series of rings arranged in abutting relationship to form an enclosing wall having a nose and a tail end, a solid rocket propellant contained within said wall and presenting a burnable concave surface to said tail end, and a separate layer of slow-burning fuse material located in said rocket propellant with electrical leads imbedded in said fuse material and extending therefrom to a re-ignition means chamber.

### THE "EXTINGUISHING" GROUP

The claims of this group are numbered 6 through 10. Claim 6 is illustrative:

6. A rocket comprising a series of rings arranged in abutting relationship to form an enclosing wall having a nose and a tail end, a solid rocket propellant contained within said wall and presenting a burnable concave surface to said tail end, a series af [sic] screens imbedded in said propellant and extending transversely across the interior of each of said rings, said screens presenting a concave surface to said tail end, and a separate layer of explosive adjacent the nose end of each screen and adapted to be exploded to extinguish the burning surface of said propellant.

### THE "STEERING" GROUP

Claims 11, 12 and 38. Claim 11 is representative:

11. A rocket comprising an enclosing wall having a nose and a tail end, a solid rocket propellant contained within said wall and presenting a burnable surface to said tail end, a number of tubes positioned in spaced-apart relationship in said propellant and extending in the general direction between said nose and tail ends, and

an auxiliary propellant of the gelatin type contained within a tank in said rocket and connected to said tubes, said auxiliary propellant being adapted to be selectively extruded through said tubes to steer the rocket.

## THE "SCREEN MATERIAL" GROUP

Claim 16, defining the screens of claim 1 as slower-burning than the propellant, and claim 17, defining those screens as faster-burning than the propellant, comprise this group.

## THE "PROPELLANT" GROUP

This group includes claims 27, 28, 33, 34, and 37. Claim 27 is illustrative, the subsequently numbered claims of this group being drawn to different characteristics of the "pellets" in claim 27:

27. A solid propellant for rockets and the like comprising a matrix of solid burnable material, and pellets dispersed within said matrix, with each pellet having a resilient coating which includes fuzzy fibers that add structural strength to the propellant.

## THE PRIOR ART

The following patents were cited:

| | | | | |
|---|---|---|---|---|
| Unge | 826,293 | Jul. | 17, | 1906 |
| Foulke | 2,072,671 | Mar. | 2, | 1937 |
| Damblanc | 2,114,214 | Apr. | 12, | 1938 |
| O'Neill, Jr. | 2,600,678 | Jun. | 17, | 1952 |
| Thomas | 2,856,851 | Oct. | 21, | 1958 |
| Murphey, Jr. | 2,986,092 | May | 30, | 1961 |
| Brewer | 3,090,196 | May | 21, | 1963 |
| Priapi | 3,129,561 | Apr. | 21, | 1964 |
| Zwerina (Great Britain) | 505,747 | May | 10, | 1939 |

Damblanc discloses a diminishing-length, solid fuel rocket, the wall of which may be formed of abutting rings or connected sleeves, with identically shaped, elongated segments or layers of propellant each having a central, inwardly conical, rearwardly open well or recess. In the "ring" form, numerous rings adhere to each propellant segment. In the "sleeve" form the sleeves are connected to each other by clamp rings. Between propellant layers, i. e., between the forward end surface of one and the annular rear surface about the recess of the next succeeding layer, Damblanc positions annular flat rings of cardboard.

Zwerina shows a continuous rocket shall with a fixed nozzle at its rear and a solid propellant formed in concave layers to focus the gases toward the nozzle.

O'Neill teaches a rocket propellant formed in layers of explosive material separated by layers of slower-burning material.

Thomas discloses a rocket having two charges of propellant, each with its own selectively operable igniter means to provide a choice in rocket range.

Unge proposes a plurality of propellant cells separated, in effect, by elastic discs of felt, paper, pasteboard, cloth or other suitable elastic materials, all of which must be "bad conductors of heat."

Brewer shows radially disposed structurally strengthening rods embedded in his rocket propellant, each rod covered with spines.

Murphey's disclosure is directed to a rocket propellant grain formed of two half grains separated by a sheet of reinforcing material (fiber glass, fiber glass cloth, canvas, nylon or other porous plastic filled medium) to retain the last-to-burn fragments until they are consumed.

Foulke teaches capsules embedded in the powder of an artillery shell, the capsules containing a material which may burn either more or less rapidly than the powder.

Priapi is directed to a rocket engine igniter including a matrix of propellant material with ignition pellets formed of a metal and an oxidizer and encased in the matrix.

## THE REJECTIONS

The "screen" claims were rejected under 35 U.S.C. § 103 on Damblanc in view of Zwerina. The examiner stated, and the board agreed, that "it would be obvious to form the propellant segments of Damblanc into concave segments" as taught by Zwerina.

The "re-ignition" claims were rejected under 35 U.S.C. § 103 as being an ob-

vious combination of the disclosures of Damblanc, Zwerina, O'Neill and Thomas.

All of the "extinguishing" claims were rejected under 35 U.S.C. § 112 as based on inadequate disclosure and drawn to an inoperative device. No specific "extinguishing" materials were found in appellant's specification and the board agreed with the examiner's view that the explosion of any such material, if it did extinguish the burning layer of propellant, would ignite the next succeeding propellant layer.

The "steering" claims were also rejected under 35 U.S.C. § 112, the examiner and board agreeing that appellant's "steering" fuel would "burn back up the pipe."

Claims 16 and 17, covering "screen material" were rejected under 35 U.S.C. § 103 as obvious in view of Damblanc, Zwerina and Unge, the latter patent suggesting felt discs between charges and different burning rates as between one propellant charge and the next.

The "propellant" claims were rejected under 35 U.S.C. § 103, the differing limitations set forth in the claims being shown in the patents to Brewer, Murphey, Foulke and Priapi.

### OPINION

The Patent Office's "screen" group includes claims 1–2, 15–19 and 29–31. They are characterized by the solicitor as reciting "a rocket comprising a series of rings forming an enclosing wall for layers of propellant with a series of foraminous screens shaped concave to the tail end of the rocket imbedded in the layers of the rocket." It is clear from the record that the board similarly considered these claims in rejecting them.

That characterization is reasonably descriptive when applied to claims 2, 15, 18, 29, 30, and 31 which define the screens as merely "imbedded." That characterization is too general, however, when applied to claim 1 which requires that the screen be *attached* to the rings to transfer stress thereto and *hold the rocket together* or to claims 16, 17, 19, and 20, dependent on claim 1.

■ It is error to ignore specific limitations distinguishing over the references. In re Chandler, 254 F.2d 396, 45 CCPA 911 (1958). We find nothing in the references to suggest the attached screen construction set forth in claims 1, 16, 17, 19, and 20. The argument is made in the Patent Office brief that Damblanc's cardboard separators are attached "at least in Fig. 2". We find nothing in Damblanc to indicate such attachment. In Figures 1 and 3, Damblanc's separators are not aligned with the abutting ends of his wall-forming rings or sleeves. In Figure 2 they are, but nothing in Damblanc's specification or in his Figure 2 suggests any attachment or any means of or purpose for such attachment. None of the references disclosing separators suggests that they be ring-connected metal screens and none suggests any reason therefor. The solicitor's reliance on the similar burn-retarding effects of cardboard and metal is misplaced when the screens are disclosed and claimed as performing functions other than burn-retarding.

■ Claims 16 and 17, the "screen material" claims, define the screens of claim 1 respectively as slower and faster-burning than the propellant. The Patent Office tribunals have pointed to the "separators" of Unge as slower-burning. Before us the solicitor additionally points to the slower-burning nature of Damblanc's cardboard. The board pointed out that these two claims themselves dramatize the noncriticality of either slower or faster-burning material in the separators. If the screens of claims 16 and 17 were "separators" the rejection of these claims would be unassailable. The same result would obtain if these claims were dependent on claim 2 or any of the other claims wherein appellant simply lists screens embedded. As we read claims 16 and 17, however, they are limited not to mere separators but to connected screens forming a part of the rocket structure (claim 1) and formed

of a material having a burning rate at variance with that of the propellant. No reference suggests such arrangement or any reason to convert the purely separating felt discs supplied by Unge (to provide flexibility) into such elements. The substitution of Unge's felt discs for Damblanc's cardboard annuli would not produce the structure of these claims. Similarly, we do not find the prior art suggesting the total combination of claim 20, dependent on claim 1. Accordingly, the rejection of claims 1, 16, 17, 19, and 20 must be reversed.

■ Claims 2, 15, 18, and 29–31, and with them claims 35 and 36, refer to embedded screens and some of their functions. The mere embedding of any size screens cannot be assumed capable of performing the listed functions. Hence, these claims are fair game for the broad treatment given them below. We readily agree with the Board that the formation of Damblanc's propellant segments in concave layers would be obvious in view of Zwerina's layers of varying concavity. Appellant's contention respecting claims 18 and 30, which require identity of layer-concavity, is not persuasive. Damblanc's segments are identical. Such identity is a consideration in the diminishing-length rockets of appellant and Damblanc and not in the fixed length rocket of Zwerina. The rejection of claims 2, 15, 18, 29–31, 35 and 36 will therefore be affirmed.

Claims 39–41, although included in appellant's "screen" group, contain no reference to screens but are directed broadly to a concave-layer propellant. We affirm their rejection as obvious in view of Damblanc and Zwerina for the reasons just discussed.

■ "Re-ignition" claims 3 and 32 were rejected on Damblanc, Zwerina, O'Neill, and Thomas. O'Neill shows slower-burning layers in a rocket and Thomas shows separately ignitable electrical squibs in a rocket. Appellant argues that the citation of elements from these and the Damblanc and Zwerina patents amounts to rejecting the claims merely because "every element" is

"found" in the prior art, which was held improper by us in In re Holt, 162 F.2d 472, 34 CCPA 1129, (1947). We disagree. In the present case, the references themselves teach the incorporation of the "found" elements in rocket propellants precisely as claimed by appellant. Appellant stresses his embedding of electrical leads in a slower-burning fuse layer, but igniting with an embedded as distinguished from a contacting wire would constitute only an obvious matter of choice to the worker skilled in the art. Moreover, Thomas suggests that his squib-surrounding, tubular propellant charge could be solid. The selective ignition of a fuse layer before its contact by a burning surface required by claim 32 is clearly presaged by Thomas' selectively fired squibs in his duo-range rocket. Hence the rejection of claims 3 and 32 will be affirmed.

■ The rejection of the "extinguishing" and "steering" groups of claims (6–12 and 38) must also be affirmed. Appellant has provided no sound rebuttal of the board's position that, as to these features, appellant's disclosure is inadequate and inoperative and thus not in compliance with 35 U.S.C. § 112. With respect to claim 11, we note appellant's specification which refers to gelatinized water and includes a broad reference to a propellant that will not back-burn. We agree, however, with the board that the word "propellant" as used throughout the claim can only be interpreted as limited to a burnable material and thus to one which would necessarily burn back up the pipe.

■ The "propellant" group of claims is directed to various features of appellant's pellets embedded in his propellant. The cited references establish that pellets themselves are old and that the shape, positioning, and accessories such as coatings and spines claimed by appellant have all been employed in the prior art when the results achieved thereby are desired. Appellant stresses that Foulke shows an artillery shell propellant that "explodes" and does not burn gradually like a rocket propellant. The ex-

aminer correctly pointed out that the difference in burn rate of all propellants is one of degree only. While appellant charges that the board applied a new rejection in holding claim 33 unpatentable over Brewer, that charge requires no further discussion, because we agree that the claim is unpatentable over Foulke, a rejection made by the examiner and sustained by the board. Accordingly, the rejection of claims 27, 28, 33, 34, and 37 will be affirmed.

The decision of the board is *affirmed* as to claims 2, 3, 6, 7, 8, 9, 10, 11, 12, 15, 18, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, and 41 and *reversed* as to claims 1, 16, 17, 19, and 20.

Modified.