**Application of Abraham SCHNEIDER and Archibald P. Stuart.**
**Patent Appeal No. 8972.**

United States Court of Customs and Patent Appeals.
Aug. 9, 1973.

Barry A. Bisson, Wilmington, Del., attorney of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Henry W. Tarring, II, Falls Church, Va., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and LANE, Judges, and ALMOND, Senior Judge.

LANE, Judge.

This is an appeal from the decision of the Board of Appeals sustaining § 103 rejections of claims 1–11 of appellants' application[1] entitled "Rubber Containing Acid-Treated Oils and Its Preparation," and refusing to consider claims 12–22 which were submitted by appel-

lants after final rejection, but which were refused entry by the examiner. We reverse in part and remand.

### The Subject Matter

The involved subject matter is principally directed to a composition comprising a particular form of mineral oil in conjunction with natural or synthetic rubber, the oil serving to plasticize or extend the rubber. The specification presents the background of the invention as follows:

It is known in the art to employ mineral oil as a plasticizer or extender for rubbery materials including both natural rubber and synthetic rubber such as butadiene polymers and interpolymers, etc., and such oils generally impart highly satisfactory properties to the rubbery material in question. However, rubbery materials plasticized with mineral oil plasticizers of the prior art exhibit a disadvantageous tendency to stain materials adjacent to the rubbery material. Furthermore, in the case of light-colored rubber products, e. g., white sidewall tires for automobiles, footwear, etc. rubbery materials plasticized with prior art mineral oil plasticizers show a disadvantageously poor color stability, particularly upon aging in bright sunlight.

The claimed subject matter is said to be free of the disadvantages of the previous compositions. Claim 1 defines that subject matter as follows:

1. A rubber composition comprising
 (1) rubber selected from the group consisting of natural rubber, homopolymers of conjugated diolefins, and copolymers of conjugated diolefins with ethylenically unsaturated monomers, plasticized with
 (2) mineral oil which

---

1. Serial No. 657,438 filed May 29, 1967. The specification states:
  This application is a continuation of application Serial No. 547,670, filed May 4, 1966, which was a continuation of application Serial No. 186,825, filed April 6, 1962, now abandoned which was a continuation of application Serial No. 822,155, filed June 22, 1959, now abandoned, which was a continuation-in-part of application Serial No. 409,478, filed February 10, 1954 and now abandoned.

(a) contains 10 to 45 Wt. % of aromatic compounds, and

(b) has compositions within the area ABCD in Figure II of the drawings [Fig. 2, reproduced below], which mineral oil has been obtained by

(c) mixing a mineral oil starting material with an acidic reagent comprising anhydrous hydrogen fluoride in amount from 10 to 40 percent by weight of said starting material; thereby to form an acid phase insoluble in said mineral oil and containing components extract-ed from said starting material, and an oil phase comprising unextracted components of said starting material including 70 to 96% of the aromatics in said starting material and containing dissolved acidic material.

(d) separating said acid phase from said oil phase,

(e) mixing said oil phase with an alkaline reagent to neutralize said dissolved acidic material and form neutralization products, and

(f) separating said neutralization products from said oil phase.

FIG. 2

[A7693]

Figure "II," referred to in claim 1, which is labeled "Fig. 2" in the drawings but "II" in the specification, depicts the distribution of carbon atoms in the oil as explained in the specification:

Turning now to Figure II, the coordinates of the diagram are $C_p$, $C_a$, and $C_n$ which represent, respectively, percent paraffinic carbon atoms, percent aromatic carbon atoms, and percent naphthenic carbon atoms, as determined by the n-d-M carbon-type analysis disclosed in the book, Aspects of the Constitution of Mineral Oils, by Van Nes and Van Westen (1951) at page 335 et seq., $C_p$, $C_a$, and $C_n$ add up to 100% and are approximations of the proportions in the oil of carbon

atoms occurring in, respectively, acylic chains, aromatic rings, and saturated ring structures.

Preferred plasticizers according to the invention are those which fall within the area ABCD on the diagram. The treatment of a mineral oil fraction according to the invention to obtain a treated oil falling within the area ABCD has been found to produce exceptionally good plasticizers for synthetic rubber. The treated oil obtained in the subsequent Example II contains about 41 percent paraffinic carbon atoms, about 17 percent aromatic carbon atoms, and about 42 percent naphthenic carbon atoms, and its composition is indicated by the circle [located near the A–D line] in the area ABCD on the diagram. The composition of the oil prior to extraction lay outside the area ABCD in the region of the diagram to the left of the line AD.

Claims 2–7 are composition claims which depend from claim 1. Claim 10 is somewhat broader than claim 1, and claim 11 depends from claim 10. Claims 10 and 11 do not have the limitations appearing in subparagraphs (2)(c), (2)(d), (2)(e) and (2)(f) of claim 1.

Claims 8 and 9 are method claims. Claim 9 is dependent on claim 8, and claim 8 reads as follows:

8. Process for preparing rubber compositions which comprises admixing a rubber selected from the group consisting of natural rubber, homopolymers of conjugated diolefins, and copolymers of conjugated diolefins with ethylenically unsaturated monomers, with mineral oil having at least 10 Wt. aromatic compounds which has been obtained by

(a) mixing a mineral oil starting material with an acidic reagent comprising anhydrous hydrogen fluoride in amount from 10 to 40 percent by weight of said starting material; thereby to form an acid phase insoluble in said mineral oil and containing components extracted from said starting material, and an oil phase comprising unextracted components of said starting material and containing dissolved acidic material,

(b) separating said acid phase from said oil phase,

(c) mixing said oil phase with an alkaline reagent to neutralize said dissolved acidic material and form neutralization products, and

(d) separating said neutralization products from said oil phase.

*Rejection of Claims 1–7 and 10–11*

The prior art patents relied upon by the examiner were:

Evering et al.
(Evering)    2,449,463    Sept. 14, 1948
Boggs et al. (Boggs) 2,778,807   Jan. 22, 1957
                                 (filed May 26, 1953)

The examiner rejected claims 1–7 and 9–11 under 35 U.S.C. § 103 as obvious from Boggs in view of Evering. Boggs discloses that oil extended synthetic rubber compositions were known in the art and teaches an improvement in such compositions by the use of extender oils derived from naphthenic crudes in which a substantial portion of the aromatic compounds has been selectively removed. Boggs specifically discloses suitable mineral oils to contain up to 50–55% aromatics, but preferably less than 40–45% aromatics. Boggs teaches that "the extender oils * * * may be obtained by any of the methods known to the art." To illustrate, Boggs states that the oil may be obtained as a product of the extraction of a naphthenic crude oil fraction with "phenol, SO₂, furfural and other polar extracts or by absorption methods."

Evering discloses the refinement of hydrocarbons by using hydrogen fluoride (HF). It is taught that HF refining selectively removes certain hydrocarbon components of the hydrocarbon material, e. g. polycyclic aromatics, as well as impurities such as oxygen, sulfur and nitrogen compounds. Evering notes that the refined hydrocarbon product "may be subjected to such further treat-

ment as the circumstances warrant, e. g., washing with water, caustic solutions, contacting or percolation with clays or other refining adsorbents, treatment with bauxite in the vapor phase, etc."

The examiner found that the principal difference between Boggs and the claimed subject matter is the failure of Boggs to teach the use of an oil prepared by hydrogen fluoride refining as defined in the compositions claims. However, since Boggs teaches that the oils may be obtained by any known method, the examiner considered it obvious to use the HF refining method taught by Evering as the source of the Boggs oil. The examiner concluded that the claimed subject matter as a whole would have been obvious from Boggs and Evering. The board agreed, and the solicitor urges the correctness of the Patent Office position.

Appellants contend that the claimed compositions would not have been obvious from the two patent disclosures and that even if it were deemed to be prima facie obvious, the record provides a sufficient showing of unexpected, improved results to rebut the prima facie case. The Patent Office takes the position that the asserted evidence is not sufficient to establish nonobviousness.

Appellants also contend that Boggs is not available as a reference against the claims, an issue dealt with below. The board agreed with appellants as to claim 9, but concluded that Boggs is available as to claims 1–7 and 10–11.

We have reviewed the record as well as the arguments advanced in the briefs and at oral hearing, and we conclude that if Boggs is available as a reference, claims 1–7 and 10–11 are properly held, on this record, to be unpatentable under § 103 over Boggs in view of Evering.

◼ We think that the claimed subject matter is prima facie obvious from Boggs and Evering. By that we mean that viewing only the references and the claimed subject matter, and not considering any evidence of unexpected re-

sults, it would appear that the references could be combined as proposed by the examiner and that the conclusion that the claimed subject matter would have been obvious is reasonable. See In re Lintner, 458 F.2d 1013, 1016, 59 CCPA ——, —— (1972). Boggs clearly indicates the importance of removing the aromatics in an oil to an extent commensurate with the requirements of the appealed claims and is indifferent to the technique used to achieve that result. Evering discloses a known method of removing aromatics and suggests any further treatment as is necessary to purify the refined product for utilization in the desired manner. We think it is a fair conclusion that it would have been obvious to one having ordinary skill in the art to use the Evering method to obtain an oil eminently suitable for Boggs' purposes.

We agree with the examiner and board that the limitation imposed by reference to Fig. 2 of the drawings does not patentably distinguish the claimed subject matter from the combination of Boggs and Evering. In the absence of some demonstration of criticality, i. e., nexus between result and the limitation, we are constrained to agree that the precise relationship between paraffinic, aromatic and naphthenic carbon atoms would either be inherent or obvious since Boggs plainly uses naphthenic crudes as the basis for the extender oil. Compare In re Sebek, 465 F.2d 904, 59 CCPA —— (1972); In re Dollinger, 474 F.2d 1027, 1030 (CCPA 1973). Similarly, we agree that the other claim limitations are not shown to lead to a conclusion of nonobviousness.

We find a failure to present such facts as would rebut the holding of prima facie obviousness. There is the repeated statement in the specification to the effect that HF treatment yields an oil which has improved color stability when incorporated in rubber as compared with oils refined in other ways. In several examples an HF-treated oil is compared with a commercial oil which had not been acid treated and in one ex-

ample, an HF-treated oil is compared with an oil derived by furfural extraction. In all instances, the results indicate a lesser degree of color deterioration on the part of the HF-treated oil as a function of time than on the part of the comparative sample.

While we think that appellants might establish nonobviousness by demonstrating a significant unexpected improvement in color stability of HF-treated oils otherwise meeting the terms of the claims as compared with oils treated by other methods, we do not find the specification to present comparative examples sufficiently representative of the scope of prior art refining techniques. We must be cognizant of the strength and breadth of the Boggs suggestion that oils having the prescribed aromatic content prepared by *any* known method may be used. The assumption that the HF method disclosed by Evering would be an obvious choice, especially considering the unity of purpose shared by Boggs and Evering of reducing aromatic content, has firm support. A convincing effort to undermine that assumption would have to be based on a factual showing of comparably broad scope.

We have considered the specification disclosure as well as affidavit evidence of record. However, we are not persuaded that the HF treatment is uniquely advantageous so that we may conclude that the use of oils so treated would not have been obvious to one of ordinary skill in the art.

Our observations thus far have assumed the availability of Boggs which has an effective date of May 26, 1953, less than one year prior to the February 10, 1954, filing date of the earliest application in the chain of applications leading to the one here involved. See note 1, supra. We shall refer to that earliest application as "the 1954 application." Appellants asserted entitlement to the filing date of the 1954 application under 35 U.S.C. § 120. Moreover, appellants submitted affidavit evidence under Rule 131 allegedly proving possession of the claimed invention prior to the Boggs filing date. Hence it is appellants' position that Boggs is not available as a prior art reference, in which case the rejection based on Boggs and Evering could not stand.

Neither the examiner nor the Board regarded the Rule 131 affidavit as insufficient. Therefore, we will assume it is sufficient for the purpose it was offered. However, its pertinence depends on the entitlement of appellants to the 1954 application filing date under § 120, since if appellants' present application is not accorded that filing date, Boggs would stand as a statutory bar.

Section 120 requires the claimed invention to have been disclosed in the manner prescribed by the first paragraph of § 112. The board in effect held that the 1954 application did not describe the presently claimed subject matter and denied appellants the benefit of the 1954 filing date with respect to claims 1–7 and 10–11. It found support for claim 9 in that early application. Said the board:

> Claims 1 to 7 contain the new language ". . . including 70 to 96% of the aromatics in said starting material . . ." which is not present in the parent case and in our view brings these claims outside of the benefits accorded by 35 U.S.C. § 120. Claims 10 and 11 recite a limitation (2)(b) making reference to the area ABCD in Figure 2. It is noted that in comparison with prior applications (e. g., Serial No. 822,155) [filed June 22, 1959] the length of the line A–D in Figure 2 as filed with [the present application] is displaced to the left so as to encompass a greater range of aromaticity. This change in the graph is seen to produce the same consequences as with claims 1 to 7 above and thereby prevent appellants from using their parent filing date to support claims 1 to 7, 10, and 11.

Appellants argue that the 70–96% of aromatics limitation was inherent in the 1954 application disclosure of the pre-

ferred HF treatment. That is, it is contended that if one were to follow appellants' preferred teaching in the 1954 specification, he would obtain a treated oil which retains 70–96% of the aromatics in the starting material. Appellants specifically assert that following that preferred disclosure would lead to the *range* now claimed rather than just a single point within the range.

Appellants also contend that:

[O]nly simple calculations and minimal drafting skill are needed to obtain the substance of the limit "within the area ABCD in Figure II of the drawings" (within the degree of mathematical significance of such a limit) from the percentages of carbon atoms and ratios of aromatic to paraffinic and of naphthenic to paraffinic carbon atoms disclosed in [the 1954 application] * * *.

Finally, appellants argue that support in the intervening application is immaterial as long as the 1954 application supports the present claims.

■ As to the last point, we think it clear that there has to be a continuous chain of copending applications each of which satisfies the requirements of § 112 with respect to the subject matter presently claimed. See In re de-Seversky, 474 F.2d 671 (CCPA 1973). There must be continuing disclosure through the chain of applications, without hiatus, to ultimately secure the benefit of the earliest filing date.

■ The inherency argument is advanced by appellants as to each application in the chain to which the examiner or board made reference. We can find no response to it other than the view that there is no written description corresponding literally to the claim language involved. The Patent Office is applying too strict a standard in requiring such literal correspondence. See In re Smythe, Cust. & Pat.App., 480 F.2d 1376, decided June 28, 1973; In re Smith, Cust. & Pat.App., 481 F.2d 910, decided August 2, 1973.

■ In the absence of a definitive Patent Office position on the inherency arguments, we have before us an issue heavily dependent on factual assumptions and findings without basis for resolution. The Patent Office is the place for initial findings of fact. We do not feel that we should attempt to resolve the issue without benefit of the board's views on the matter. Accordingly, we remand the case to the Patent Office to reconsider the availability of Boggs in light of this opinion.

### The Rejection of Claims 8 and 9

■ Process claims 8 and 9 were rejected under 35 U.S.C. § 103 as obvious from the state of prior art as admitted by appellants. Boggs was held not to be available as to these claims since it was agreed that the prior applications supported the claims and that appellants were entitled to the benefit of the 1954 application filing date under § 120, and neither the examiner nor the board relied on Evering. The theory of the rejection is that the process calls only for mixing a mineral oil with rubber. The specific mineral oil is not deemed relevant.

The rejection of claims 8 and 9 is not sustainable. The claims are limited to the HF-treated oil, and the subject matter as a whole specifically includes the use of such an oil. One not having the mineral oil defined in the claims would not find it obvious to use it as an extender for rubber. See In re Kuehl, 475 F.2d 658 (CCPA 1973).

### The Refusal to Consider Claims 12–22

The examiner refused entry of these claims submitted after final rejection, and the board accordingly did not consider them before it. Appellants zealously assert that the board erred in refusing to consider the claims and that we can, and must, correct that error. The solicitor takes the position that we have no jurisdiction in the premises.

■ The underlying dispute involves the timeliness of appellants' submission

of claims 12–22. Because he regarded them as not timely filed, the examiner never entered them and rendered no adverse decision regarding them. The board did not consider the substance of the claims or review the examiner's action. We do not agree with appellants that the examiner's and board's actions in this case were tantamount to a rejection of the claims. Nor do we agree that the Administrative Procedure Act confers jurisdiction upon this court where it otherwise would not lie. Finding no decision whatever to review, we hold that we have no jurisdiction to consider and act upon appellants' allegations of procedural unfairness on the part of the Patent Office.

*Summary*

The appeal is *dismissed* as to claims 12–22. The decision of the board is *reversed* with respect to claims 8 and 9. The case is *remanded* to the Patent Office with respect to claims 1–7 and 10–11 for the reasons and purposes set forth above.

Reversed in part and remanded.