Joseph SOLOMON, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 83–1140.

United States Court of Appeals, Sixth Circuit.

Submitted March 6, 1984.

Decided May 2, 1984.

Irving Bell, Cleveland, Ohio, for petitioner-appellant.

Kenneth W. Gideon, Chief Counsel, I.R.S., Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Carleton D. Powell, Patricia A. Willing, Washington, D.C., for respondent-appellee.

Before ENGEL and KEITH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

This is an appeal from a judgment of the Tax Court which determined that the taxpayer, Joseph Solomon, was deficient in the payment of federal income taxes for the years 1969–72 in the amount of $50,068. The Tax Court also imposed a 50% civil fraud penalty of $25,031 against Solomon pursuant to 26 U.S.C. § 6653(b). Solomon now appeals this decision by the Tax Court.

Joseph Solomon is a certified public accountant, who during the years 1969–72, was engaged in the business of rendering accounting, bookkeeping, tax preparation and other related services. Two of his clients during this period were Ohio Farmers Wholesale Dealer, Inc. (Ohio Farmers) and B & T Tool & Die Co. (B & T). Solomon's duties for these clients included preparing and maintaining journals and ledgers, preparing reports and tax returns, and tendering tax payments on behalf of these clients. After Solomon prepared tax returns for Ohio Farmers, and B & T, the presidents of these two companies would, at Solomon's direction, prepare checks payable to either Cleveland Trust Company or the Western Reserve Bank. These checks were supposedly prepared to pay each respective company's withholding tax liability. Solomon, however, deposited these checks into his personal accounts after he endorsed them. From 1969–72, Solomon diverted approximately $49,000 from Ohio Farmers and approximately $84,000 from B & T.

These diversions were not discovered until 1973 when the Internal Revenue Service (IRS) became aware of the fact that the two companies involved were seriously delinquent in the payment of their payroll taxes. Both companies eventually filed civil actions against Solomon for the funds that he wrongfully converted. Ohio Farmers obtained a judgment in the amount of $43,650 while B & T's judgment was for $67,550.

In 1973, the IRS began an investigation of Solomon and the circumstances surrounding the payroll tax diversions and his failure to file income tax returns for 1969–72. It was later discovered that Solomon moved from the Cleveland area. A four-count information was subsequently filed against Solomon charging him with willful failure to file income tax returns for 1969–72. He ultimately pleaded guilty to the 1972 charge and the remaining charges were dropped.

The Commissioner of the Internal Revenue Service determined deficiencies in Solomon's income taxes for the four years in question and further assessed civil penalties for each of those years. Solomon opposed the proposed deficiencies and fraud penalties by claiming that the diverted funds were loans and thus not income. The Tax Court found that the funds were not loans and should have been reported as income. It also upheld the Commissioner's assessment of a 50% civil fraud penalty against Solomon.

Section 61(a) of the Internal Revenue Code defines gross income as "all income from whatever source derived." Gross income includes funds derived from legal and illegal sources. *Rutkin v. United States*, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952).

The issue of misappropriated funds as gross income was addressed by the Supreme Court in *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). In *James*, the taxpayer was a union official who had embezzled funds. The court was called upon to determine whether these funds were includible as income to the union official who had embezzled the funds. It ruled that the funds were includible as income. In reaching this decision, the Court noted:

> When a taxpayer acquires earnings lawfully or unlawfully, *without the consensual recognition, express or implied* of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money and even though he may still be adjudged liable to restore its equiva-

lent ..." This standard brings wrongful appropriation within the broad sweep of gross income...

*James, supra,* at 219, 81 S.Ct. at 1055 (emphasis added).

As the government points out, this language indicates that a consensus would be necessary for finding that a loan exists between two parties, which would not be includible in the taxpayer's income. The only evidence introduced by Solomon regarding this issue was his own testimony that the misappropriated funds were loans.

Despite Solomon's testimony on this matter there was overwhelming evidence to the contrary. The presidents of Ohio Farmers and B & T both testified that they did not intend for the checks to be made payable to Solomon's banks as loans. They testified that they thought the money was being given to Solomon for the payment of their payroll taxes. Furthermore, the wrongful conversion suits brought against Solomon by Ohio Farmers and B & T are also evidence that the money was not intended as loans. Obviously a wrongful conversion suit would not have been brought against Solomon if the money was loaned to him. Solomon also stipulated to wrongfully converting the funds.

In sum, all of this evidence fails to indicate the consensus necessary according to *James.* A consensus requires mutual consent and there is no evidence of consent by Ohio Farmers or B & T for loans to Solomon. Consequently, the Tax Court was correct in finding that the money misappropriated by Solomon was includible in his income.

■ Solomon also argues that the funds in question should not be included as income because he was not prosecuted and convicted of embezzlement. This argument is without merit. According to *James,* a lack of consensus is all that is necessary for a finding that misappropriated or embezzled funds are included as income to the embezzling or misappropriating party. Nowhere is it mentioned that there must be a criminal conviction.

Solomon also asserts that the Tax Court erred by assessing a 50% fraud penalty against him. He claims that the evidence is not sufficient to justify the imposition of a 50% fraud penalty pursuant to 26 U.S.C. § 6653(b) which provides in pertinent part:

> Fraud—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment.

26 U.S.C. § 7454(a) requires the Commissioner to prove fraud by clear and convincing evidence. This Court recently upheld that standard in *Zack v. Commissioner,* 692 F.2d 28 (6th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 1774, 76 L.Ed.2d 346 (1983).

The issue of fraud is a factual one, and the Court of Appeals may reverse the Tax Court's finding of fraud only if it finds that the Tax Court's decision was clearly erroneous. Fed.R.Civ.P. 52(a).

■ A number of indicia of fraud have been relied on in cases decided under Subsection 6653(b) (26 U.S.C.). These include, first, taxpayers' failure to file returns. While the failure to file is not in itself sufficient to prove fraud, it is persuasive circumstantial evidence of fraud when coupled with other indicia or "badges" of fraud. *Marsellus v. Commissioner,* 544 F.2d 883, *rehearing denied,* 546 F.2d 906 (5th Cir.1977); *Powell v. Granquist,* 252 F.2d 56, 60 (9th Cir.1958); *Beaver v. Commissioner,* 55 T.C. 85, 93 (1970). A second factor is a taxpayer's failure to report income over an extended period of time. *Foster v. Commissioner,* 391 F.2d 727, 733 (4th Cir.1968). A taxpayer's failure to furnish the Government with access to his records is also a factor. *Estate of Granat v. Commissioner,* 298 F.2d 397, 398 (2d Cir.1962); *Milliken v. Commissioner,* 298 F.2d 830, 836 (4th Cir.1962). Another consideration is a taxpayer's failure to keep adequate books and records. *Estate of Upshaw v. Commissioner,* 416 F.2d 737, 741 (7th Cir.1969), *cert. denied,* 397 U.S. 962, 90 S.Ct. 993, 25 L.Ed.2d 254 (1970). Further evidence is taxpayer's experience and knowledge, especially knowledge of tax laws. *O'Connor v. Commissioner,*

412 F.2d 304, 310 (2d Cir.1969); *Tooke v. Commissioner*, 46 T.C.M. (P–H) para. 77,-091 at 407 (1977), *aff'd* 505 F.2d 1299 (9th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). A taxpayer's concealment of bank accounts from Internal Revenue agents is yet another sign indicating fraudulent intent. *Henry v. Commissioner*, 362 F.2d 640, 643 (5th Cir. 1966); *Sunbrook v. Commissioner*, 48 T.C. 55, 65 (1967). Finally, a taxpayer's willingness to defraud another in a business transaction may point towards willingness to defraud the Government also. *Afshar v. Commissioner*, 50 T.C.M. (P.H.) para. 81,-241 at 811–12 (1981), *aff'd* 692 F.2d 751 (4th Cir.1982), *cert. denied*, — U.S. ——, 103 S.Ct. 2088, 77 L.Ed.2d 299, (1983). Much of this evidence is present in the instant case.

■ Solomon undoubtedly failed to file a tax return for four years. He failed to report the income during this same period. There was also testimony that Solomon failed to give the IRS access to his tax records. He also failed to maintain adequate books and records during the years in question. Solomon was a certified public accountant in the business of handling the tax matters of others, so he obviously had knowledge of the tax laws. He also concealed one of his bank accounts from the IRS. He also defrauded Ohio Farmers and B & T by making them think he had paid their taxes when he actually diverted their proceeds for his own use.

Solomon seeks to avoid the Tax Court's findings of fraud by relying on *Morrell v. Commissioner*, 40 T.C.M. (P–H) para. 71,-099 (1971), and *DePumpo v. Commissioner*, 40 T.C.M. (P–H) para. 71,115 (1971). These cases are inapposite. In both cases the Tax Court made the specific finding that the taxpayer had cooperated fully with the Internal Revenue Service in its investigation. *Morrell, supra; DePumpo, supra.* That is patently not the case in the instant controversy.

There was undoubtedly clear and convincing evidence for the tax court to find that Solomon had engaged in fraudulent behavior. Accordingly, the judgment of the Tax Court is affirmed.