T.C. Memo. 2018-1

UNITED STATES TAX COURT

CURTIS EUGENE ANKERBERG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21104-16.                    Filed January 8, 2018.

Curtis Eugene Ankerberg, pro se.

<u>Jeffery D. Rice</u> and <u>Erik W. Nelson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies of $13,247, $29,800, and $17,207; accuracy-related penalties under section 6662(a) of $1,029, $646.80, and $1,193.20; and fraud penalties under section 6663 of $6,076.50, $19,699.50, and $8,093.25, for 2012, 2013, and 2014, respectively.  In the answer respondent asserts for all three years larger penalties than those determined in the notice of

[*2] deficiency. Respondent asserts that the section 6663 fraud penalty should apply to the entire amount of the deficiency determined for each year and, in the alternative, asserts that the section 6662(a) accuracy-related penalty should apply to the entire amount of each deficiency.

The issue for decision is whether petitioner is liable for penalties under either section 6663 or section 6662(a) for the years in issue. He contends that medical problems he suffered constitute reasonable cause for his underpayments under section 6664(c)(1). All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Oregon when he filed his petition.

Petitioner received a bachelor's degree in business administration from California State University at Los Angeles. He was licensed as a certified public accountant (C.P.A.) in Oregon in 1994 and practiced continuously through the years in issue. He satisfied continuing education requirements to keep his license active through the years. He worked for various public accounting firms until

[*3] 2005, when he started practicing on his own without any employees. During the years in issue petitioner operated his business out of his home.

Through the years in issue, petitioner prepared tax returns, gave tax advice to clients, and represented clients before the Internal Revenue Service (IRS). He prepared over 70 returns for clients in 2012, over 60 in 2013, and over 50 in 2014. He prepared returns for individuals, partnerships, S corporations, and C corporations. He drove a car during each year, and he ran for local office nine times in nine years, including the years in issue.

Petitioner prepared his own individual tax returns for 2012, 2013, and 2014. He underreported gross receipts and claimed excessive deductions on Schedules C, Profit or Loss from Business, in the amounts now stipulated as set forth below. He claimed 50% of his personal residence expenses as deductions on each Schedule C, but he did not attach a Form 8829, Expenses for Business Use of Your Home, to any of his filed returns for 2012, 2013, and 2014.

On his return for 2013 filed in October 2014, petitioner reported gross receipts of $26,150 from his business. The IRS commenced an examination of petitioner's returns for 2012 and 2013 (and later expanded the examination to include 2014). On October 5, 2015, the IRS sent petitioner a notification of proposed changes proposing additional tax attributable to identified omissions of

[*4] $8,850 in income for 2013, which were reported to the IRS on information returns by petitioner's clients. Petitioner paid the proposed amount of additional tax. However, the amount of unreported gross receipts that petitioner agreed to was less than his actual unreported gross receipts for 2013. Petitioner signed his 2014 return on October 14, 2015.

The examination of petitioner's returns was conducted at petitioner's residence, and the examining agent observed and inspected the areas that petitioner claimed were used as his office. Petitioner referred to documents in his possession but failed to turn over documents requested by the examining agent. He gave several alternative explanations for repeated delays and failures to cooperate with the examining agent, including: he was scheduled for cataract surgery (which occurred in July 2015); he wanted to await the outcome of a Treasury Inspector General for Tax Administration (TIGTA) complaint that he had made; records had been lost; and his liability for 2013 had been closed when he accepted the proposed adjustment attributed to the unreported income reported by his clients. He explained that he had not attached the form required to claim business use of the home expenses because that "would be a red flag for an audit."

Although petitioner claimed to have bank statements when first interviewed, he declined to turn them over, contending that he could not see them. Because

[*5] petitioner failed to turn over records, the examining agent summoned petitioner's bank account records and analyzed deposits into the account for each year. The agent determined unreported income for each year. He also obtained information about the number of filed returns in each year identifying petitioner as the preparer.

Before trial, the parties entered into a stipulation in which petitioner conceded unreported gross receipts of $20,423, $69,960, and $20,983 for 2012, 2013, and 2014, respectively. Petitioner also conceded the disallowance of deductions for unsubstantiated insurance, taxes and licenses, office expenses, repairs and maintenance, utilities, mortgage interest, car and truck expenses, depreciation and business use of the home, and other expenses reported on his returns for the years in issue. The disallowed and conceded deductions exceeded $29,000 for 2012, $14,000 for 2013, and $24,000 for 2014.

The omitted income and disallowed deductions resulted in an underpayment attributable to a substantial understatement of income tax for each year, the precise amounts of which will require computations under Rule 155.

OPINION

The fraud penalty is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy

**[\*6]** expense of investigation and the loss resulting from the taxpayer's fraud. See Helvering v. Mitchell, 303 U.S. 391, 401 (1938). The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b).

To impose the 75% penalty provided by section 6663, the Commissioner has the burden of proving for each relevant year (1) an underpayment of tax and (2) that the underpayment was due to fraud. See, e.g., May v. Commissioner, 137 T.C. 147 (2011), aff'd per order, 2013 WL 1352477 (6th Cir. Feb. 19, 2013); Sadler v. Commissioner, 113 T.C. 99, 102 (1999); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). The latter burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

Petitioner has conceded unreported income and the disallowance of substantial Schedule C deductions for each year. Respondent's burden of proving the underpayments for each year thus has been met.

As to respondent's second burden, fraud may be proven by circumstantial evidence, and the taxpayer's entire course of conduct may establish the requisite fraudulent intent. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). In

**[\*7]** determining whether petitioner's underpayment was due to fraud, we apply long-recognized "badges of fraud" evolved from cases analyzing section 6663 or former section 6653(b)(1). See, e.g., Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); see also Bradford v. Commissioner, 796 F.2d 303, 308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601. Badges of fraud include (but are not limited to) a pattern of understated income, inadequate records, implausible or inconsistent explanations of behavior, concealing assets, failure to cooperate with tax authorities, filing of false documents, and lack of credibility. Bradford v. Commissioner, 796 F.2d at 307; Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), aff'g T.C. Memo. 1984-25. Misstatements during an audit, even by an unsophisticated taxpayer, may support a finding of fraud. See, e.g., Ruark v. Commissioner, 449 F.2d 311 (9th Cir. 1971), aff'g T.C. Memo. 1969-48. Petitioner's education and experience may be considered in determining whether he acted with fraudulent intent. See Scallen v. Commissioner, 877 F.2d 1364, 1370-1371 (8th Cir. 1989), aff'g T.C. Memo. 1987-412; Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), aff'g T.C. Memo. 1982-603; Wright v. Commissioner, T.C. Memo. 2000-336, slip op. at 14.

The evidence establishes a pattern of unreported income and overstated deductions, failure to keep or produce records, and failure to cooperate with the

[*8] IRS. As a C.P.A. and tax professional, petitioner knew what the tax laws required in relation to his tax reporting for the years in issue. Petitioner claims that the understated income, overstated deductions, and loss of records are attributable to his various serious medical problems during the years in issue, which constitute reasonable cause under section 6664(c)(1). However, he has not overcome the clear and convincing evidence of fraud in this case. The most telling additional badge of fraud is the lack of credibility in petitioner's attribution of the "mistakes" on his returns to medical problems, particularly those affecting his eyesight. During the years in issue, he continued to prepare scores of returns for clients and to prepare his own returns without seeking assistance. He continued to drive a car. He prepared his return for 2014, which continued the pattern of omissions and erroneous deductions, after he had cataract surgery. His admissions and misrepresentations to the examining agent are further evidence of fraud. We do not accept his explanations, and we conclude that respondent has established fraudulent intent for each year by clear and convincing evidence.

To allow for necessary computations,

Decision will be entered

under Rule 155.